IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

SOLBELLO, INC.,

    Plaintiff,

v.

SHORESHADE, LLC,

    Defendant.

CV 125-267

**ORDER**

Presently before the Court are Plaintiff's motion for preliminary injunction, Defendant's motion for leave to file sur-reply, and Defendant's motion for leave to file supplemental declaration regarding factual developments. (Docs. 5, 34, 37.) Plaintiff seeks to enjoin Defendant's alleged product infringement and shield itself from continuing irreparable harm. (Doc. 5, at 2.) The Court held a preliminary injunction hearing on December 1, 2025 and took the matter under advisement. (Doc. 36.) For the reasons below, Plaintiff's motion for preliminary injunction (Doc. 5) is **DENIED**, Defendant's motion for leave to file sur-reply (Doc. 34) is **DENIED AS MOOT**,[1] and Defendant's motion for leave to file supplemental declaration (Doc. 37) is **GRANTED**.

---

[1] Local Rule 7.6 states: "A party intending to file a reply brief shall immediately so notify the Clerk and shall serve and file the reply within fourteen (14) calendar days of service of the opposing party's last brief." Here, Plaintiff's last filing, a brief in support of its motion for preliminary injunction, was filed on November 21, 2025. (Doc. 32.) Defendant's motion, with sur-reply attached, was filed three days later. (Docs. 34, 34-1.) Thus,

# I. BACKGROUND

On November 7, 2025, Plaintiff initiated this action and moved for a preliminary injunction to enjoin Defendant from "manufacturing, using, promoting, or selling its accused product." (Doc. 1; Doc. 5, at 2.) Plaintiff alleges this case arises from Defendant's unlawful copying of Plaintiff's "patented sunshade invention." (Doc. 1, at 1.) Plaintiff argues Defendant's sunshade product (the "Defendant Product") infringes the claims of Plaintiff's reissue patent (the "'606 Patent"). (Id. at 15.) Particularly, Plaintiff alleges the Defendant Product contains every element of Claim 44 of the '606 Patent, "either literally or under the doctrine of equivalents." (Id.) Defendant argues no infringement occurred because no infringing act took place "during the term of the patent." (Doc. 22, at 1 (quoting 35 U.S.C. § 271(a)).) Defendant contends the Defendant Product was not sold or otherwise able to be purchased since before '606 Patent was issued. (Id. at 2-3.) The '606 Patent was issued on September 30, 2025, and Plaintiff seeks "forward-looking relief" from that date to current "to stop Defendant from, among other things, having customers sign up on a 'waitlist' to receive the [Defendant Product] once it comes back into stock." (Doc. 1, at 6; Doc. 32, at 7.)

---

Defendant timely filed its reply. See L.R. 7.6, SDGa. The Court finds Defendant's motion (Doc. 34) is an unnecessary filing based on the District's Local Rules, and as such, it is **DENIED AS MOOT**. The Court considers Defendant's sur-reply brief (Doc. 34-1) when ruling on the preliminary injunction.

At the December 1, 2025 hearing, Plaintiff focused its arguments on the "likelihood of success on the merits" preliminary injunction factor. (Court's recording system, *For the Record* ("FTR") 02:13:12-02:13:25 (Dec. 1, 2025).) Plaintiff narrowed its path to infringement to two main questions: (1) Is Defendant's website information an offer to sell to consumers; and (2) Is there infringement of Plaintiff's product under the doctrine of equivalents? (FTR 02:17:27-02:17:51.) Plaintiff contended Defendant made "offers to sell" the Defendant Product ever since the '606 Patent was issued through the product listings on its website, which included photos, prices, and descriptions of the Defendant Product, as well as a waitlist feature for ordering. (FTR 02:18:10-02:21:35; Doc. 32, at 5.)

Plaintiff also argued the Defendant Product infringes through the doctrine of equivalents, meaning the Defendant Product either "performs substantially the same function in substantially the same way to achieve the same result" or "there are only insubstantial differences between" the infringing product and the relevant element of the patented product. (FTR 02:21:37-02:30:06; Doc. 5, at 16 (citations omitted).) The Parties agree the pertinent element is the '606 Patent's Claim 44, element 4 ("Element 4"): "at least one rib located proximate [to] the top end of said mast, and configured to rotate relative to the supporting surface." (Doc. 22, at 8; Doc. 35, at 7-8.)

3

During the December 1, 2025 hearing, Defendant argued Plaintiff has not shown a likelihood of success and the website does not constitute an offer to sell because the site does not provide "offers" as defined by contract law and customers cannot purchase the Defendant Product online. (FTR 02:31:52-13:35:32; Doc. 34-1, at 3-4.) Further, it argued the Defendant Product does not infringe the '606 Patent either literally or through the doctrine of equivalents, because (1) the Defendant Product does not rotate in the same manner as Plaintiff's shade such that it does not perform the substantially same function, and (2) the functional equivalent of Element 4 "at least one rib . . . specifically designed to rotate relative to the mast" is not present. (FTR 02:40:31-02:43:18; Doc. 34-1, at 4-5.) Defendant argues that because the Defendant Product's top beam structure is fixed with respect to the mast, unlike Plaintiff's design where the top beam structure rotates with the mast, that "[t]he ShoreShade product does the opposite of what [the] limitation specifies," so it cannot be considered equivalent. (FTR 02:43:15-02:43:25.) Defendant also produced a sample of the Defendant Product for the Court to compare with Plaintiff's sample and confirmed the Defendant Product was being discontinued. (FTR 02:29:47-02:30:03, 02:32:50-02:37:11.)

On December 2, 2025, Defendant moved for leave to file a supplemental declaration regarding factual developments. (Doc. 37.) Plaintiff did not object to the motion, but it responded.

4

(Doc. 38.) Given there is no objection, and the declaration is relevant to the Court's decision herein, Defendant's motion (Doc. 37) is **GRANTED**.

Defendant's declaration informed the Court of changes made to its website after discussions during the hearing. (Id. at 1.) The declaration states Defendant removed the waitlist and wishlist options, "Shop Now" buttons were updated to "New & Improved Next Gen ShoreShade Coming Soon!," product pictures now state "Discontinued" instead of "Sold Out," and under the product overview section of the product listing, it also reads "New & Improved Next Gen ShoreShade Coming Soon!" (Doc. 37-1, at 2-4.) In response, Plaintiff argues a ruling on the preliminary injunction is still necessary because (1) Defendant's declaration offers no binding legal commitment to maintain the changes; (2) Plaintiff made the requisite showing for an injunction; (3) the Parties will receive Court guidance on the remaining disputes depending on the outcome of the motion; and (4) resources were already expended, so it is appropriate for the Court to resolve the pending motion. (Doc. 38, at 1-2.)

The Court has considered the Parties' filings and arguments made at the December 1, 2025 hearing. The applicable legal standard is detailed below.

## II. LEGAL STANDARD

Preliminary injunctions are extraordinary remedies that are not granted unless the movant unequivocally establishes four

5

required elements. See Redford v. Gwinnett Jud. Cir., 350 F. App'x 341, 345 (11th Cir. 2009)); see also United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983) ("The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." (citation omitted)). "The grant or denial of a preliminary injunction is a matter within the discretion of the district court." Jefferson Cnty., 720 F.2d at 1519 (citation omitted). Granting a preliminary injunction is proper only if the moving party establishes the following four elements:

> (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.

Schiavo v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

The Court notes the Federal Circuit applies a more lenient standard to meet likelihood of success on the merits, being "more likely than not" to succeed rather than "substantial likelihood" as applied in the Eleventh Circuit. (Doc. 5, at 10 n.2); Revision Mil., Inc., v. Balboa Mfg. Co., 700 F.3d 524, 526 (Fed. Cir. 2012). Given the Federal Circuit has determined the district court should apply the Federal Circuit's standard when considering "[s]ubstantive matters of patent infringement [that] are unique to patent law," the Court will utilize this standard in its analysis. Revision Mil., 700 F.3d at 526.

6

To establish a direct patent infringement claim, one must show: (1) Plaintiff owns the patent in question; and (2) Defendant made, used, sold, or offered to sell the patented invention. 35 U.S.C. § 271(a); <u>Kanga Care, LLC v. Bumbum Babies, LLC</u>, No. CV 122-009, 2022 WL 22650525, at *2 (S.D. Ga. Oct. 25, 2022). Additionally, every element of at least one of the patent's claims must be present in the potentially infringing product, either through literal infringement or the doctrine of equivalents. <u>See Perkin-Elmer Corp. v. Westinghouse Elec. Corp.</u>, 822 F.2d 1528, 1533 (Fed. Circ. 1987) (citation omitted); <u>UCB, Inc. v. Teva Pharms. USA, Inc.</u>, No. 1:12-CV-4420, 2015 WL 11199058, at *10 (N.D. Ga. Mar. 18, 2015) ("In a patent infringement lawsuit, the plaintiff has the burden to show that every element of the patent claim is present in the alleged infringing product, either through literal infringement or the doctrine of equivalents.")

Given the above considerations, a plaintiff must show an act of infringement occurred during the term of the patent to demonstrate a likelihood of success on the merits. 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.")

7

### III. DISCUSSION

The main point of contention between the Parties is whether Plaintiff has shown a likelihood of success on the merits. As a result, the Court focuses its analysis there.

Plaintiff asserts, and Defendant does not contest, that Plaintiff owns the '606 Patent; thus, the first element is met. (Doc. 5, at 11; see Doc. 22.) The two remaining requirements are disputed. In terms of infringing acts, both Parties focused only on Defendant's alleged "offer to sell" at the December 1, 2025 hearing. Plaintiff argues Defendant's website listings since the grant date of the '606 Patent constitute offers to sell under the definition coined in 3D Systems: activity that is "generating interest in a potential infringing product to the commercial detriment of the rightful patentee." 3D Sys., Inc. v. Aarotech Labs. Inc., 160 F.3d 1373, 1379 (Fed. Cir. 1998) (finding Defendant's price quotation letters were considered offers to sell under § 271 based on details the letters conveyed, such as a description of the merchandise at issue and the purchase price); MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1376 (Fed. Cir. 2005). Plaintiff asserts the photos of the Defendant Product and wishlist feature, as well as the product price and detailed descriptions, generated interest among consumers so as to comprise an offer to sell. (Doc. 32, at 4-5).

Defendant argues a narrower standard of offer to sell: a definition "according to the norms of traditional contractual

8

analysis." (Doc. 34-1, at 2-3 (quoting Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1257 (Fed. Cir. 2000) (going against 3D Systems and finding the accused infringer must communicate a "manifestation of willingness to enter into a bargain," such that the other person understands "his assent to that bargain is invited and will conclude it" to constitute an offer to sell based on the Restatement (Second) of Contracts § 24 (1979))).) Defendant asserts its website prevented purchases for the entire period in question and did not allow a customer to form a binding contract by acceptance. (Id. at 3-4.)

The Federal Circuit has relied on both standards when determining whether an action constitutes an offer to sell. MEMC, 420 F.3d at 1376. District courts are inconsistent on which standard to apply. See, e.g., Bell Helicopter Textron Inc. v. Airbus Helicopters, 78 F. Supp. 3d 253, 271 (D.D.C. 2015) ("The Federal Circuit has more recently relied on a narrower, contracts law concept of 'offer,'" but, the Circuit "has declined to overrule 3D Systems . . . which suggests that a broader definition may be appropriate in some circumstances"); Sanho Corp. v. Kaijet Tech. Int'l Ltd., 736 F. Supp. 3d 1241, 1273 (N.D. Ga. 2024) (citing 3D Systems and applying the "generating interest" definition to find an offer to sell); Invitrogen Corp. v. Evidence Techs., Inc., No. CV 608-163, 2008 WL 11348389, at *3 (E.D. Tex. Oct. 29, 2008) ("The viability of 3D Systems . . . [has] been called into serious doubt by subsequent case law . . . Rotec effectively overruled 3D

9

Systems' broader interpretation of § 271(a).") Given the ambiguity in application, the Court considers the merits under both.

The Court finds there is no infringing action occurring such that a preliminary injunction is appropriate. The Parties do not dispute Defendant has not made, used, or sold the Defendant Product since the '606 Patent was granted. Further, Defendant made substantive changes to its website that eliminate the potential for the Court to find an offer to sell under either standard. (Doc. 37-1, at 2-4.) Since '606 Patent was issued, Defendant's website did not allow customers to buy the Defendant Product. Even though nonbinding caselaw contends that certain product listing information, such as price and product description, may constitute an offer under the broader 3D Systems standard, there is currently no "offer to sell" action to enjoin here. See, e.g., Sanho Corp., 736 F. Supp. 3d at 1273; Lexmark Int'l Inc. v. Laserland Inc., 304 F. Supp. 2d 913, 916-17 (E.D. Ky. 2004) (finding offer to sell under 3D Systems where website featured products for sale that could be ordered by consumers through the site).

Defendant alleges the Defendant Product is discontinued and will not be ordered by Defendant again. (FTR 02:30:25-02:30:35.) The Court finds Defendant's website no longer offers the Defendant Product for purchase, nor does it include product information such as price that could constitute an offer to sell according to 3D Systems. The products shown are obviously unavailable to consumers, as they are discontinued, and the website announces a

10

"New & Improved Next Gen ShoreShade Coming Soon!" (Doc. 37-1, at 3.) As a result, the site is not "generating interest in a potential infringing product to the commercial detriment of the rightful patentee." 3D Sys. Inc., 160 F.3d at 1379.

Certainly, if 3D Systems is unmet, then the Court cannot find the website contains offers to sell under the narrower Rotec standard. To constitute an offer under Rotec, the "manifestation of willingness to enter a bargain" must be clear such that the customer understands "his assent to that bargain is invited and will conclude it." Rotec Indus., 215 F.3d at 1257 (quoting Restatement (Second) of Contracts § 24 (1979)). Defendant's website provides no option to purchase the Defendant Product or add it to a customer's cart. Defendant has removed the product prices and "Shop Now" buttons, as well as the wishlist and waitlist features. (Doc. 37-1, at 2-4.) Considering these details altogether, a customer could not now view the website and believe his assent will grant him a sunshade from Defendant. Therefore, Defendant's website does not contain an offer to sell under a "traditional contractual analysis" theory, so no act of infringement is occurring.

Given the above analysis, the Court declines to grant a preliminary injunction based on the mere potential for Defendant's future actions involving the Defendant Product. Because Plaintiff has failed to show, "more likely than not," that Defendant has offered to sell its Defendant Product or otherwise engaged in

11

infringing acts since the grant of the '606 Patent, the Court finds Plaintiff has not demonstrated a likelihood of success on the merits. A basic requirement of infringement is unsatisfied, so there is no need to determine whether the Defendant Product infringed the '606 Patent, either literally or through the doctrine of equivalents.

Further analysis of the remaining three preliminary injunction elements is superfluous. Plaintiff has not established its likelihood of success on the merits as necessary to warrant such an extraordinary and drastic remedy.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's motion for preliminary injunction (Doc. 5) is **DENIED**, Defendant's motion for leave to file sur-reply (Doc. 34) is **DENIED AS MOOT**, and Defendant's motion for leave to file supplemental declaration (Doc. 37) is **GRANTED**.

**ORDER ENTERED** at Augusta, Georgia, this 22nd day of December, 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA