**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| SOLBELLO, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-00267-JRH-BKE |
| SHORESHADE, LLC, | ) | |
| Defendant. | ) | |

**SHORESHADE'S RESPONSE TO SECOND PRELIMINARY INJUNCTION MOTION**

For a second time, Solbello seeks the extraordinary remedy of a preliminary injunction, alleging only that ShoreShade has directly infringed Claim 44 of U.S. Pat. No. RE50606 (the "Reissue Patent") under the doctrine of equivalents ("DOE"). Because Claim 44 is invalid and Solbello's infringement position is fatally flawed, its motion should be denied again.

As shown in the attached invalidity claim charts (Exhibit 2), both U.S. Pat. Publ. No. 2013/0019794 to Neal ("Neal") (Exhibit 3) and DE 2020/14103145U1 ("German Reference") (Exhibit 4) disclose every limitation of Claim 44, thus invalidating the claim for lack of novelty.[1] Neither of these references was considered by the U.S. patent examiner; if they had been considered, Claim 44 would not

[1] Solbello filed a European counterpart to the U.S. application that became the Reissue Patent, European Published Patent Application No. 4,585,774 ("European Application"). In the European Application, Solbello presented a claim (Claim 4 in that application) that is identical to Claim 44 of the Reissue Patent. The European patent examiner rejected Claim 4 for a lack of novelty based on both Neal and the German Reference. The European patent examiner also rejected the claim for being broader than the disclosure of the patent application's specification. While European and U.S. patent laws differ in some respects, the result would be the same under U.S. law – Claim 44 is invalid.

have issued. Also, because Solbello seeks to expand the meaning of Claim 44 beyond its true scope in an effort to ensnare ShoreShade, the claim is invalid for a lack of enablement and written description.

Solbello's infringement positions also fail. Apparently recognizing the weakness of its case, Solbello makes no meaningful literal infringement argument. Instead, they jump straight to the DOE. However, as a matter of law, the doctrine of equivalents is not available here for numerous reasons.

Moreover, Solbello's claims that ShoreShade's next generation product rotates in use are wrong. Specifically, in the new video submitted by Solbello, ShoreShade's product is installed contrary to the installation instructions and manipulated in an apparent attempt to achieve a desired result. If Mr. James had simply followed ShoreShade's instructions, perhaps these proceedings could have been avoided entirely.

ShoreShade is submitting additional evidence with this response showing that the next generation product, when installed correctly according to the instructions, does not rotate in normal operating conditions. In the screenshot below, the ShoreShade product was set up at an oblique angle from the direction of the blowing wind and then observed for a period of time as a test. The test results demonstrate that the top beams do not rotate even under strong wind conditions.



Any injunction would likely shut ShoreShade's business down for the next two beach seasons, and there is no guarantee that ShoreShade would be able to survive. So the balance of the equities weigh strongly against an injunction.

A preliminary injunction is not appropriate where there is any "substantial question" about infringement or validity. *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997). Because there are numerous substantial questions about the validity and infringement of the Reissue Patent, Solbello's motion should be denied.

## I. BACKGROUND

Solbello originally obtained U.S. Pat. No. 11,596,211 (the "Original Patent"). However, on September 12, 2023, Solbello filed a reissue patent application seeking to broaden the claims in the Original Patent. Compl. (Dkt. No. 1) at ¶ 20. The reissue patent application ultimately resulted in the Reissue Patent, which issued on September 30, 2025. On issuance of the Reissue Patent, the surrender of the Original Patent took effect, making the Original Patent no longer assertable. 35 U.S.C. § 252. Claim 44, the sole claim asserted in this case, was not in the Original Patent, but sprang into existence as a patent claim only with the issuance of the Reissue Patent on September 30, 2025.

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *accord Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1345 (Fed. Cir. 2020). The burden is on Solbello to show it is likely to succeed on the merits, that it is likely to suffer irreparable harm caused by the alleged infringement absent preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Luminara Worldwide v. Liown Elecs. Co.*, 814 F.3d 1343, 1352

(Fed. Cir. 2016) (quoting *Winter*, 555 U.S. at 20); *accord Incyte Corp. v. Sun Pharm. Indus., Ltd*., 135 F.4th 1381, 1383 (Fed. Cir. 2025).[2]

As to a likelihood of success on the merits, Solbello must show that: "(1) the patentee will likely prove that the accused infringer infringes the asserted patent; and, (2) the patentee's infringement claim will likely withstand the accused infringer's challenges to the validity and enforceability of the patent." *Sciele Pharma Inc. v. Lupin Ltd*., 684 F.3d 1253, 1259 (Fed. Cir. 2012) (noting that this showing is made while considering the presumptions and burdens that will inhere at trial on the merits). If a defendant raises a "substantial question" concerning infringement or validity, the preliminary injunction should not issue. *Genentech*, 108 F.3d at 1364; *accord Regeneron Pharms., Inc. v. Mylan Pharms. Inc*., 130 F.4th 1372, 1384 (Fed. Cir. 2025).

The likelihood of success factor "depends fundamentally on the meaning of the asserted claim and its relationship to the accused product or process." *Chamberlain Grp., Inc. v. Lear Corp*., 516 F.3d 1331, 1339–40 (Fed. Cir. 2008). "[A] correct claim construction is almost always a prerequisite for imposition of a preliminary injunction." *Id*.; *accord Pfizer, Inc. v. Teva Pharms., USA, Inc*., 429 F.3d 1364, 1372 (Fed. Cir. 2005) ("Determining the likelihood of infringement requires two steps, first claim construction and second a comparison of the properly construed claims to the accused product."). Claim construction is a legal determination reviewed de novo. *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc*., 555 F.3d 984, 989 (Fed. Cir. 2009) (citing *Phillips v. AWH Corp*., 415 F.3d 1303, 1328 (Fed. Cir. 2005) (*en banc*)).

---

[2] Federal Circuit precedent applies to preliminary injunctions in patent cases. *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc*., 908 F.2d 951, 953 (Fed. Cir. 1990).

## III. ARGUMENT

Due to the absence of infringement, and the glaring invalidity of Claim 44, Solbello cannot show a likelihood of success. Solbello also fails to show that any harm is attributable to an infringement of Claim 44, especially because no infringement has occurred and no infringement will occur. Moreover, the balance of the equities weigh against injunctive relief and an injunction is not in the public interest.

### *A. No Likelihood of Success.*

Solbello is not likely to succeed because (1) Claim 44 is invalid as being anticipated (i.e., not novel) in light of both Neal and the German Reference; (2) Claim 44 is invalid for a lack of written description under 35 U.S.C. § 112, especially if read as broadly as Solbello would have the Court read it; and (3) ShoreShade's accused product falls outside the scope of Claim 44 for numerous reasons. Each issue is discussed below.

#### *i. Claim 44 is Not Novel and Therefore Invalid Under 35 U.S.C. § 102.*

In relevant part, Section 102 of the Patent Statute states:

> (a) NOVELTY; PRIOR ART. A person shall be entitled to a patent unless—
>
> (1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention . . .

35 U.S.C. § 102. Thus, a claim that lacks novelty is not patentable under U.S. law.

The language of Claim 44 is shown below:

> 44. A sun shade assembly comprising:
> a mast configured to extend upwardly from a supporting surface, and having a top end and a bottom end;
> *at least one rib located proximate the top end of said mast, and configured to rotate relative to the supporting surface;*

> a sail having a proximal edge secured to said rib and an unrestrained free edge adapted to unfurl in response to blowing of the wind, and wherein an entire surface area of said sail is unrestrained from the proximal edge to the free edge; and
>
> *when unfurled, said sail and rib are adapted to rotate together to a direction of the blowing wind*.

Claim charts comparing the limitations of Claim 44 with the disclosure of both Neal and the German Reference are included in Exhibit 2.

To invalidate a claim under Section 102, a reference must expressly or inherently disclose each limitation of the claim. *Orion IP, LLC v. Hyundai Motor Am*., 605 F.3d 967, 975 (Fed. Cir. 2010). Neal and the German Reference are both "printed publications" as mentioned in the statute, so they may be used in evaluating the validity of the claim. As the claim charts show, each of these references separately disclose all limitations of Claim 44.[3] Therefore, Claim 44 is invalid.

*ii. Claim 44 is Invalid for a Lack of Enablement and Written Description.*

Especially if Claim 44 of the Reissue Patent is read as broadly as Solbello wants, it is invalid at least because of a lack of "enablement" and "written description."

In addition to a requirement of novelty under Section 102 and non-obviousness under Section 103, the patent statute requires:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

35 U.S.C. § 112(a). To satisfy the written description requirement of Section 112(a), the patent's disclosure must "reasonably convey[ ] to those skilled in the art that the inventor had possession of the

[3] For the European Application, the European patent examiner made his own independent analysis and similarly concluded that the claims lacked novelty. As stated above in Note 1, the European patent examiner found, in considering an identical claim, that Neal and the German Reference disclosed every limitation of the claim. The European Search Report rejecting the claim and the pending claims at the time of this search report are included in Exhibit 6.

claimed subject matter as of the filing date." *Brita LP v. Int'l Trade Comm'n*, 156 F.4th 1326, 1331 (Fed. Cir. 2025) (quoting *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*)). Assessing such "possession as shown in the disclosure" requires "an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Id*. (quoting *Ariad*, 598 F.3d at 1351). "[T]he specification must describe an invention understandable to [a person of ordinary skill in the art] and show that the inventor actually invented the invention claimed." *Id*. at 1331–32 (quoting *Ariad*, 598 F.3d at 1351).

For a broad, functional claim to meet the written description requirement, the patentee must demonstrate he "has invented species sufficient to support a claim to the functionally-defined genus." *Id.* at 1335 (quoting *Ariad*, 598 F.3d at 1349). This is where Claim 44 fails.




Claim 44 is a new claim by which Solbello attempted to obtain broader coverage than it got in the Original Patent. An annotated version of FIG. 1 of the Reissue Patent is shown above with various claim terms shown to aid the Court. Claim 44 requires that "at least one rib . . . [is] configured to rotate relative to the supporting surface." All of the description in the Reissue Patent indicates that this

limitation is met by rotating the rib relative to a non-rotatable mast. *See* Reissue Patent at col. 3, lines 7–10, col. 7, lines 34–38, col. 9, lines 1–2, col. 12, line 39. In other words, the specification only describes a species where the mast does not rotate. The pivot cap, the ribs, and support arms are always described as being able to rotate relative to the mast to allow the ribs to rotate to the direction of the blowing wind.

The patent examiner's statements indicate that he interpreted the claim as limited to the disclosed species (i.e., a nonrotating mast with rotating ribs). In the examiner's statement of reasons for allowance, he discussed application Claim 47, which became Claim 44 in the Reissue Patent after the claims were renumbered for issuance. There, the examiner stated the closest prior art was U.S. Pat. Publ. No. 2008/0196754 to Saiz ("Saiz"), which he distinguished by stating that "Saiz does teach rotation, ***but this rotation is effected by the mast, and not relative to the mast.***" Dkt. 22-2 at 9. Thus, in the examiner's view, the ribs of the Reissue Patent must rotate "relative to the mast," and this was the critical point of distinction between Saiz and the present claim. Now that Solbello has obtained a patent, it is trying to use a broader interpretation for infringement compared to the interpretation on which the claim was granted. This is improper. *Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1381 (Fed. Cir. 2021) (citations and internal quotation marks omitted). The examiner's application of Saiz to similar claims shows he considered other claim limitations in Claim 44 to be met.

Because the specification does not support an interpretation of Claim 44 that would result in infringement by a rotating mast, it is invalid.[4]

[4] While European standards on the scope of a patent application's disclosure are different from those in the U.S., it is worth noting that the European patent examiner reached a similar conclusion in the counterpart European Application. In evaluating claim 4 of that application, which is identical to Claim 44 of the Reissue Patent, the European patent examiner stated "[t]he content of the present Application extends beyond the content" of the application for several reasons, including the absence of an express recitation of a pivot cap.

*iii. ShoreShade's Product is Outside the Scope of Claim 44*

The accused product does not infringe because it falls outside the scope of Claim 44. "[D]irect infringement can be found when 'each and every limitation set forth in a claim' is found in an accused product." *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 139 F.4th 1340, 1348 (Fed. Cir. 2025). Each limitation must be present either literally or under the DOE. *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016). "The law is clear . . . that 'infringement is determined on the basis of the claims, not on the basis of a comparison with the patentee's commercial embodiment of the claimed invention.'" *Myco Indus., Inc. v. BlephEx, LLC*, 955 F.3d 1, 15 (Fed. Cir. 2020) (citations omitted).

Even assuming for the sake of argument that the end cap does rotate in the ground (it does not), there would still be no literal infringement if the claim is interpreted properly because ShoreShade's top beam does not rotate relative to its pole. Solbello's DOE arguments also fail as they are barred by law and because Solbello's own statements reveal a lack of equivalence. Further, ShoreShade's product does not rotate when installed properly and used as intended.

**a. Claim Construction**

Claim 44, the sole claim at issue, is reproduced in its entirety above, but includes among other limitations the following:

> at least one rib located proximate the top end of said mast, and configured to rotate relative to the supporting surface;
>
> . . .
>
> when unfurled, said sail and rib are adapted to rotate together to a direction of the blowing wind.

"Determining the likelihood of infringement requires two steps, first claim construction and second a comparison of the properly construed claims to the accused product." *Pfizer*, 429 F.3d at 1372.

"[A] correct claim construction is almost always a prerequisite for imposition of a preliminary injunction." *Id.* When Claim 44 is properly construed, ShoreShade's product does not infringe the claim.

The starting point in construing such claims is their ordinary and customary meaning, which "is the meaning that the term would have to a person of ordinary skill." *Phillips*, 415 F.3d at 1313. However, *Phillips* clarified that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* For this reason, the specification is often 'the single best guide to the meaning of a disputed term.'" *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–81 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996)) (internal quotation marks omitted). Where the specification "repeatedly, consistently, and exclusively" shows a component as having a particular feature, the claim term will be defined by implication to include this feature. *In re Abbott Diabetes Care Inc.*, 696 F.3d 1142, 1149–50 (Fed. Cir. 2012). Courts also look to the prosecution history with the patent office to understand the meaning of a claim term. *Phillips*, 415 F.3d at 1314.

Claim 44 requires "at least one rib . . . ***<u>configured to rotate</u>*** relative to the supporting surface." This does not mean that the rib can be fixed to the mast and rotate as the mast itself rotates relative to the "supporting surface" (which appears to be how Solbello is attempting to apply the term). Instead, "configured to rotate" means that something about the ribs themselves makes them specifically designed to rotate relative to the supporting surface—a rib that is fixedly attached to the mast so it rotates with the mast is not "configured to" rotate but is merely along for the ride. *Cf. Ball Aerosol*, 555 F.3d at 994 (reversing district court's grant of summary judgment of infringement in favor of patentee where district court granted summary judgment because the accused product was "reasonably capable of being configured in such a way that its holder is supported by the cover," with Federal Circuit stating that the mere fact that the accused product "was reasonably capable of being put into the claimed

configuration is insufficient for a finding of infringement" where the claim language itself specified that infringement occurs only if the accused product was ***<u>configured</u>*** with a cover used as a base underneath a candle holder).

Solbello's motion seeks relief on the basis of "direct infringement generally [as opposed to indirect infringement, i.e., contributory infringement or inducing infringement], and the doctrine of equivalents in particular." Motion at 12. In other words, Solbello's Motion concedes there is no literal infringement of Claim 44. Moreover, while offering lip service that "configured to" might mean merely "capable of" rotating relative to the ground rather than "specifically designed to rotate relative to the mast," they offer no serious argument "capable of" is correct. ShoreShade therefore interprets Solbello's motion as agreeing to the same construction that was discussed in the previous briefing at Dkt. No. 22 at 8–11. Thus, ShoreShade will continue to construe "at least one rib . . . configured to rotate relative to the supporting surface" to mean "at least one rib . . . specifically designed to rotate relative to the mast."

Solbello uses the term "capable of" in several instances in the Reissue Patent. Reissue Patent at col. 8, line 62; *id*. at col. 9, line 32; *id*. at col. 12, line 61. This shows that Solbello knew how to use this "capable of" term when it wanted to, and, by using a different "configured to" term in claim 44, Solbello intended to have a different meaning apply.

In fact, the Reissue Patent touts the relative rotation between sail and mast as an important feature, stating: "because the sail rotates relative to the mast it prevents loosening the auger position and thereby causing failure of the assembly." Reissue Patent at col. 12, lines 42–44. A construction that the ribs themselves are specifically designed to rotate is consistent with this discussion and other discussion throughout the specification, which repeatedly describes the ribs as being rotatable about the non-movable mast with an auger at the base of the non-movable mast. *See infra* at Section III(A)(ii). Given the repeated, consistent, and exclusive discussion that the mast is not capable of

moving and the ribs are configured to rotate relative to the mast, the claim term has been defined by implication.

Solbello makes a stray reference to *In re Blue Buffalo Enters., Inc.*, but this case is inapposite as it relates to a patent application and not an issued patent. No. 2024-1611, 2026 WL 100470, at *1 (Fed. Cir. Jan. 14, 2026). Specifically, *Blue Buffalo* addressed an appeal from the Patent Office of a rejected patent application. In the Patent Office, and appeals of *ex parte* examinations of patent applications, claims are construed under a broadest reasonable interpretation standard. *In re Starrett*, No. 2023-1425, 2023 WL 8663080, at *2 (Fed. Cir. Dec. 15, 2023). This standard is entirely different from the *Phillips* standard applied in federal district courts. *DDR Holdings, LLC v. Priceline.com LLC*, 122 F.4th 911, 918 (Fed. Cir. 2024); *see also Phillips*, 415 F.3d at 1313 (fundamental case regarding claim construction in federal district courts); *see also Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012) (interpreting "adapted to" to have a "narrower definition, such as configured to" rather than a broader meaning such as "capable of").

If Solbello does not intend to stick to this agreed construction, Claim 44 is invalid. The claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses, and the Federal Circuit has "repeatedly rejected efforts to twist claims, like a nose of wax, in one way to avoid invalidity and another to find infringement." *Data Engine*, 10 F.4th at 1381 (citations and internal quotation marks omitted). As stated previously, Solbello has created a Catch-22 situation for itself. It can press forward and seek a broader claim construction of Claim 44, which includes a "mast" that rotates.[5] However, doing so would require a claim construction that would invalidate Claim 44 under 35 U.S.C.

[5] Even so, ShoreShade's pole does not rotate. *Infra* III(A)(iii)(d).

§ 112 for a lack of enablement and written description. A more appropriate and narrower construction, however, would not even arguably cover the ShoreShade product.

**b. ShoreShade's Product has No Rib Specifically Designed to Rotate Relative to the Mast.**

In the accused product, the top beams do not rotate relative to the pole. Schulze Decl. at ¶ 5. Therefore, the limitation "at least one rib . . . configured to rotate relative to the supporting surface" is not present in the ShoreShade product. As a result, there is no literal infringement under this construction, and Solbello does not challenge this point.

Additionally, ShoreShade's product includes the following lower end cap at the base of the pole, which includes fins that are specifically designed to prevent rotation of the pole to the direction of the blowing wind:




***Layout for ShoreShade's Products***




Schulze Decl. (Exhibit 1) at ¶ 3–5. The fins of the lower end cap will engage the surrounding sand when the lower end cap is positioned in the sand. *Id*. at ¶ 5. When installed in a manner that follows the instructions, the engagement of the fins with the sand will prevent rotation of the lower end cap over the range of normal conditions in which a beachgoer might be on the beach for recreational purposes (e.g., typical winds at the beach as opposed to hurricane level winds). *Id*. Attachment of the lower end cap to the pole prevents rotation of the pole relative to the lower end cap, and the top beams and arms are attached to the pole to prevent rotation of these components relative to the pole under normal conditions. *Id*. Thus, the lower end cap effectively prevents rotation of these components relative to the blowing wind when installed in a manner that follows the instructions. *Id*.

Because neither the pole nor the beams of the ShoreShade product are rotatable, this further supports a finding of noninfringement.

**c. DOE is Not Available as a Matter of Law and is Not Applicable Under the Facts**

Additionally, ShoreShade's product does not infringe as DOE cannot be applied for the limitation "at least one rib . . . specifically designed to rotate relative to the mast." Specifically, DOE is not available as a matter of law due to principles of vitiation, Solbello's attempt to embrace a structure that is specifically excluded from the scope of the claims, and ensnarement. In addition, there is no equivalence under the facts of this case.

DOE is disfavored as the basis for a preliminary injunction, because it is a "highly factual inquiry [that] rarely comes clear on a premature record." *Pressure Specialist, Inc. v. Next Gen Mfg. Inc.*, 469 F. Supp. 3d 863, 871–72 (N.D. Ill. 2020) (quoting *Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1382 (Fed. Cir. 2000)); *see also Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 866 (Fed. Cir. 2017) (observing that it is unusual for a court to grant a preliminary injunction based on infringement under DOE).[6] The complex, factual nature of the doctrine of equivalents is readily apparent from the numerous pages of briefing that the parties have dedicated to this topic. Thus, DOE should not be relied upon as the sole basis to find a likelihood of infringement, particularly given the highly factual inquiry that will be required in this case, the limited factual record at this stage of the case, and the other deficiencies with Solbello's DOE arguments. *See also Conair Grp., Inc. v. Automatik Apparate-Maschinenbau GmbH*, 944 F.2d 862, 865 (Fed. Cir. 1991) (vacating district court's grant of a preliminary injunction where court did not make the required findings to support a likelihood of infringement under DOE).

As noted above, the patent examiner's statements also indicate that he believed the claim did not cover an embodiment in which a rotating mast is stuck in the ground.

<u>*Vitiation*</u>

In the accused product, the top beams do not rotate relative to the pole. Instead, the top beams are fixed with respect to the pole. Equivalents must be shown on an element-by-element basis (rather than simply showing similarity of function of the overall device). *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). The rule about applying equivalents on an element-by-element basis

[6] Solbello's identification of one non-binding district court case (the *Shibumi* case) where a preliminary injunction was granted after an application of DOE does not change the fact that DOE is disfavored as the basis for a preliminary injunction. Regardless, that *Shibumi* case is readily distinguishable as explained below.

is also called the "all-elements rule." According to this rule, the DOE does not apply "where 'the accused device contain[s] the antithesis of the claimed structure,' such that the claim limitation would be vitiated." *Steuben Foods, Inc. v. Shibuya Hoppmann Corp*., 127 F.4th 348, 362 (Fed. Cir. 2025) (additional citations omitted); *Freedman Seating Co. v. Am. Seating Co*., 420 F.3d 1350, 1362 (Fed. Cir. 2005) (where claim required that a component was "slidably mounted," application of DOE to another product with a component that was rotatably mounted would vitiate the "slidably mounted" limitation). Here, the top beams are specifically designed <u>not</u> to rotate relative to the mast. *See infra* III(A)(iii)(d). Because the accused product functions in a manner that is the exact opposite of what Solbello believes it needs to show infringement, the DOE does not apply. Accordingly, there is no infringement under DOE. *Steuben Foods*, 127 F.4th at 362.

Citing to *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp*., 149 F.3d 1309, 1320 (Fed. Cir. 1998), Solbello states "two physical components of an accused device may be viewed in combination to serve as an equivalent of one element of a claimed invention." Dkt. No. 49 at 13. However, Solbello omits a critical part of this quote. The actual quote states, "[i]n other words, two physical components of an accused device may be viewed in combination to serve as an equivalent of one element of a claimed invention, <u>as long as no claim limitation is thereby wholly vitiated</u>." *Ethicon*, 149 F.3d at 1320 (emphasis added). As stated above, Solbello is attempting to vitiate the same claim construction that it agreed to, which is improper. Also, *Ethicon* explicitly recognized the importance of claim vitiation as a restraint on DOE and at least addressed the issue.

Solbello cites to *Shibumi Shade, Inc. v. Beach Shade LLC*, 2022 WL 390839, at *10 (E.D.N.C. Feb. 8, 2022), but that case is not relevant. While a previous case involving <u>the same patent in suit</u> might be entitled to some weight on factual determinations, *Shibumi* involved different parties, different patents, different accused products, and different claim terms to be construed. Moreover,

the Federal Circuit did not have a chance to review that case on appeal, so there is no way to know whether the result would have survived appellate scrutiny.[7] Given all of this, *Shibumi* does nothing to inform the appropriate result in this case.

*Exclusion*

Additionally, a patentee cannot invoke DOE to "embrace a structure that is specifically excluded from the scope of the claims." *Augme Techs., Inc. v. Yahoo! Inc*., 755 F.3d 1326, 1335 (Fed. Cir. 2014) (quoting *Dolly, Inc. v. Spalding & Evenflo Cos*., 16 F.3d 394, 400, 29 USPQ2d 1767, 1771 (Fed. Cir. 1994)). In *Augme*, the claim was construed to note that the relevant claim term ("embedded code") did not include "externally linked code." *Id*. Despite this, the patentee subsequently attempted to apply DOE to have the claim cover "externally linked code." *Id*. The Federal Circuit, however, rejected the application of DOE to embrace "externally linked code." *Id*.; *see also Kewazinga Corp. v. Microsoft Corp*., 558 F. Supp. 3d 90, 118 (S.D.N.Y. 2021) (similarly refusing to apply DOE to embrace a structure specifically excluded from claim construction); *Telemac Cellular Corp. v. Topp Telecom Inc*., 4:98-cv-00022-CW, 1999 WL 33471891, at *13 (N.D. Cal. July 1, 1999) (attempt to apply DOE in a similar circumstance amounted to an impermissible attempt to circumvent the claim construction).

This, however, is precisely what Solbello is attempting to do. In previous briefing, ShoreShade provided the appropriate claim construction in its response (Dkt. No. 22 at 8–11 (discussing claim construction)), noting Claim 44's invalidity issues related to lack of written description support if an incorrect construction were applied (*id*. at 13–15 (discussing invalidity)).

---

[7] Like Solbello does here, the *Shibumi* case merely quotes the first portion of the cite from *Ethicon* without including the "as long as no claim limitation is thereby wholly vitiated" portion that is pertinent here.

In reply, Solbello agreed to ShoreShade's construction. Dkt. No. 32 at 2. However, in the same document, Solbello attempted to apply DOE to this newly added claim construction for the first time to recapture the exact same claim scope that it just relinquished by agreeing to ShoreShade's construction. *Id*. at 9–11.

Moreover, the Reissue Patent itself admits there is no equivalence. For example, the Reissue Patent touts its anchor that prevents detachment from the sand, stating that, "because the sail rotates relative to the mast it prevents loosening the auger position and thereby causing failure of the assembly." Reissue Patent at col. 12, lines 42–44; *see also* Dkt. No. 50-1 at ¶ 11. ***There can be no equivalence when Solbello's own patent admits that rotation of its mast would cause failure of its assembly.***

According to Solbello's patent, rotation of the ribs relative to the mast versus rotation of the mast itself is not a "subtle difference in degree," but rather, "a clear, substantial difference or difference in kind." *Ethicon*, 149 F.3d at 1321. "An 'equivalent' of a claim limitation cannot substantially alter the manner of performing the claimed function." *Dolly*, 16 F.3d at 400. Even assuming Solbello's flawed premise about the ability of the lower end cap to rotate is accepted, its DOE arguments still fail.

The Federal Circuit has stated that where an "issued patent contains clear structural limitations, the public has a right to rely on those limits in conducting its business activities" and that it would "not effectively remove such a limitation under a doctrine designed to prevent 'fraud on the patent.' " *Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc*., 206 F.3d 1408, 1416 (Fed. Cir. 2000) (quoting *Sage Products, Inc. v. Devon Industries, Inc*., 126 F.3d 1420, 1425–26 (Fed. Cir. 1997)). ShoreShade, and all potential competitors, have a right to rely on the patent as is, not as Solbello wishes it to be.

*Ensnarement*

A DOE theory also cannot be asserted if it will encompass or "ensnare" the prior art. *G. David Jang, M.D. v. Bos. Sci. Corp.*, 872 F.3d 1275, 1285 (Fed. Cir. 2017) (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009)).

If Solbello's attempt to expand the claim scope through an application of DOE is accepted, this would ensnare the prior art such as U.S. Pat. Publ. No. 2008/0196754 to Saiz (Exhibit 5). "The burden of producing evidence of prior art to challenge a hypothetical claim rests with an accused infringer, but the burden of proving patentability of the hypothetical claim rests with the patentee." *G. David Jang,* 872 F.3d at 1285 (additional citations omitted). If Solbello wants to read Claim 44 broadly enough to cover a hypothetical claim where the ribs are merely capable of rotating relative to the supporting surface, Solbello must explain how the claim would still be patentable over Saiz, which the U.S. patent examiner considered to be the "closest prior art."[8] Thus, Solbello's DOE argument also fails under principles of ensnarement.

**d. The Products do Not Rotate When Properly Installed**

For reasons discussed above, there is no infringement of Claim 44 regardless of whether or not the pole of ShoreShade's product rotates (and also the top beams fixed to the top of the pole) rotate to the direction of the blowing wind. The limitation "at least one rib . . . specifically designed to rotate relative to the mast" is simply not present under literal infringement or DOE. The limitation in Claim 44 indicating that "when unfurled, said sail and rib are adapted to rotate together to a direction of the blowing wind" is also absent. While the mere absence of a single limitation defeats infringement, multiple limitations are absent here.

[8] The U.S. examiner was not aware of Neal and the German Reference.

Moreover, the addition of the finned end cap at the bottom of the pole in ShoreShade's next generation product makes an infringement claim even more tenuous. For example, in the videos submitted herewith, ShoreShade's top beams do not rotate when the product is installed according to the instructions. Instead, the fins of the lower end cap engage sand to prevent rotation of the lower end cap, thereby preventing rotation of the pole attached to the lower end cap and preventing rotation of the top beams attached to the pole. This can be seen in portions of ShoreShade's instructions reproduced below (the complete instructions are attached as Exhibit 7):




There are several reasons that the pole does not rotate when the product is correctly installed. Schulze Decl. at ¶ 10. The outer diameter of the sand tool (28.14 millimeters) is less than the outer diameter of the lower end cap in the area between the fins (31.34 millimeters). *Id.* at ¶¶ 14, 15. The side-to-side width between the outer edges of opposite fins is, of course, even larger (38.44 millimeters). *Id.* at ¶ 15. Thus, the width between the fins' outer edges is more than 10 millimeters greater than the diameter of a properly formed hole. The depth of the hole will be nearly one foot below the beach surface. *Id.* at ¶ 7. As a result, insertion of the pole into the hole pushes sand in a way that conforms tightly to the lower end cap. *Id.* at ¶ 16. The fins, which will be adjacent the bottom of the hole after installation, are thus completely surrounded by tightly

packed sand. *Id*. This effectively impedes rotation of the end cap and the other parts of the ShoreShade product. *Id*.

In the ShoreShade videos, the sand tool is used properly—inserted straight down into the ground and twisted, resulting in a small hole. *Id*. at ¶ 13. In a first test that was conducted, the ShoreShade product was aligned to the direction of the blowing wind before inserting the lower end cap into the hole. *Id*. at ¶ 19. In a second test, the ShoreShade product was rotated by over 45 degrees from the wind direction before inserting the lower end cap into the hole. *Id*. at ¶ 21. The videos show that the top beams never rotated relative to the ground. *Id.* at ¶¶ 20–22. The test in the first video ran for 12 minutes, and the test in the second video ran for 15 minutes. *Id*. The hole had the following shape after removing the lower end cap in the second test, which shows how the fins had held in position throughout the entire duration of the test. *Id*. at ¶ 24.



In contrast, the video from Mr. James, the founder and owner of Solbello, shows that he is not following the instructions and instead appears to be manipulating the test to achieve a result. For example, at about the 11 second mark in the Solbello video, Mr. James is shown using the sand tool inappropriately. *Id*. at ¶ 26. Rather than pushing the sand tool straight down, rotating the sand tool, and then removing the sand as shown in the instructions, Mr. James uses the sand tool almost

like a shovel, stabbing at the ground from numerous different angles offset from the vertical direction. *Id*. This results in an extra-large hole before the end cap was ever inserted. *Id*. At about the 27 second mark, the pole can be seen shifting in the hole due to the large hole that was created. *Id*. at ¶ 27. At about the 40 second mark in the Solbello video, it can be seen that the size of the hole is about twice the diameter of the pole itself. *Id*.

At about the 29 second mark in the Solbello video, essentially right after inserting the lower end cap into the ground, Mr. James rotates the entire device by about 90 degrees. *Id*. at ¶ 28. By doing so, this rotated the lower end cap and its fins, loosening the sand around the fins to further enable rotation of the lower end cap. *Id*. This action is analogous to drilling a starter hole in a piece of wood larger than a screw to be driven into the hole—the screw will not be tight. *Id*. This would be user error (or user manipulation), not a defect in the screw. *Id*.

ShoreShade's instructions further say the device should be aligned with the wind <u>before</u> insertion in the hole (Step 3), so again Mr. James failed to follow the instructions. *Id*. at ¶ 29. At about the 50 second mark, Mr. James packs in sand around the top of hole, but he had already defeated the purpose of the end cap by intentionally making the hole larger than it should have been and manually rotating the device after inserting the lower end cap into the ground. *Id*. at ¶ 30. Other videos for Mr. James did not show how the product was installed, and he does not describe how installation was conducted for these tests. *Id*.

Even if the pole of the ShoreShade product did rotate relative to the beach, there would still be no infringement of the Reissue Patent. However, the manipulated video that Solbello submitted in support of the present motion further demonstrates the weakness of its case.

***B. No Irreparable Harm***

There is no infringement and no cognizable harm. Any complaints from Solbello are attributable to lawful competition. *Apple Inc. v. Samsung Elecs. Co*., 695 F.3d 1370, 1374 (Fed. Cir. 2012).

***C. Balance of Equities Weigh Against Injunctive Relief.***

To be clear, entry of a preliminary injunction would have a devastating impact on ShoreShade's business. Schulze Decl. at ¶ 34. ShoreShade anticipates that an injunction would prevent it from selling its main products for the next two beach seasons, and this would potentially cause ShoreShade to shut down its business. *Id*. at ¶ 35. "[T]he hardship on a preliminarily enjoined manufacturer who must withdraw its product from the market before trial can be devastating." *Illinois Tool Works, Inc. v. Grip-Pak, Inc*., 906 F.2d 679, 683 (Fed. Cir. 1990); *accord Avocent Huntsville, LLC v. ZPE Sys., Inc*., No. 3:17-cv-04319, 2018 WL 1411100, at *17 (N.D. Cal. Mar. 21, 2018). Given that ShoreShade is a relatively small business, Schulze Decl. at ¶ 36, granting a preliminary injunction could destroy ShoreShade without giving ShoreShade its day in court. *Illinois Tool Works*, 906 F.2d at 684. These harms to ShoreShade if an injunction is granted greatly outweigh any harms to Solbello if the injunction is denied. Also, many of the harms described by Solbello are ones that are easily compensable by money damages.

A proper balance of potential hardships must also consider the patentee's showing on likelihood of success and irreparable harm. *Id.* at 683. "Because the [C]ourt must balance the hardships, at least in part in light of its estimate of what is likely to happen at trial, it must consider the movant's showing of likelihood of success." *Id.* The issues presented here show that Solbello is not likely to succeed, making the equities weigh even greater against injunctive relief. This element weighs decisively in ShoreShade's favor.

***D. An Injunction is Not in the Public Interest.***

"Of course, because there are substantial questions about the patent's validity, the public interest does not weigh in favor of enforcement." *Shure, Inc. v. ClearOne, Inc*., No. 1:17-cv-03078, 2018 WL 1371170, at *18 (N.D. Ill. Mar. 16, 2018) (citations omitted). The public interest is best served by denying a preliminary injunction where no likelihood of success has been shown. *See, e.g., Abbott Lab'ys v. Andrx Pharms., Inc*., 452 F.3d 1331, 1348 (Fed. Cir. 2006). Courts recognize a company's legitimate right to compete, especially early in litigation, and that preventing this lawful competition harms the public. *Avocent Huntsville*, 2018 WL 1411100, at *17 (citing cases). The public interest is not served by the enforcement of allegedly invalid patents or the extension of monopoly pricing by means of invalid patents. *Abbott Lab'ys v. Sandoz, Inc*., 500 F. Supp. 2d 846, 855 (N.D. Ill. 2007) (discussed in the context of pharmaceuticals).

## IV. BOND

Previously, ShoreShade was moving to its new product. However, the circumstances are now fundamentally different—as discussed herein, ShoreShade anticipates that an injunction would prevent it from selling its main products for the next two beach seasons if enjoined, and this would potentially cause ShoreShade to shut down its business. *See supra* III(C). ShoreShade has raised numerous "substantial questions" sufficient to defeat Solbello's motion. Given this, Solbello should be required to pay a bond equal to the anticipated amount of gross profits for ShoreShade over the next two seasons. Given the highly confidential nature of this financial data, ShoreShade requests appropriate protections for its confidential business information and further briefing on this issue if the Court is inclined to grant this motion—any other approach would require this highly confidential material to be shared with Solbello unnecessarily.

## V. CONCLUSION

As none of the elements for a preliminary injunction have been established here, Solbello's preliminary injunction motion should be denied.

NELSON MULLINS RILEY & SCARBOROUGH LLP

*/s/ Lucas A. Westby*

**Lucas A. Westby**
GA Bar No. 594008
lucas.westby@nelsonmullins.com
**Megan Walker Burton**
GA Bar No. 525103
megan.burton@nelsonmullins.com
**Nelson Mullins Riley & Scarborough, LLP**
201 17th Street NW
Suite 1700
Atlanta, GA 30363

**Craig N. Killen***
SC Bar No. 65464
craig.killen@nelsonmullins.com
**Jonathan D. Todd***
SC Bar No. 103758
jonathan.todd@nelsonmullins.com
**Nelson Mullins Riley & Scarborough, LLP**
301 South College Street, Suite 2300
Charlotte, NC 28202

*Counsel for Defendant ShoreShade LLC*

** Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I certify that service of the foregoing document has been completed by filing this document with the Court's electronic-filing system.

This the 7th day of May 2026.

*_/s/ Lucas A. Westby_*

**Lucas A. Westby**