IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| Solbello, Inc.,<br>Plaintiff<br><br>v.<br><br>ShoreShade LLC,<br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE NO.:<br>1:25-cv-00267-JRH-BKE |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING POST-GRANT REVIEW PROCEEDINGS**

**INTRODUCTION**

ShoreShade's Motion (D.E. 68) requests a ***pre-institution*** stay of Solbello's patent infringement case in favor of a post-grant review ("PGR") petition, which ShoreShade recently filed with the Patent Trial and Appeal Board ("PTAB"). However, "***stays are almost never granted before such review is instituted***." *Omni MedSci., Inc. v. WHOOP, Inc.,* 2025 WL 3719630, *2 (D. Del. Dec. 23, 2025) (emphasis added) (collecting cases) (Bryson, J).[1] ShoreShade's Motion should likewise be denied.

On the last day it could do so, ShoreShade filed a PGR petition asking the PTAB to declare ***three*** of Solbello's ***ten*** asserted claims in the '606 Patent invalid. However, the PTAB will first decide whether it will even consider the merits of

[1] Judge Bryson has been on the U.S. Court of Appeals for the Federal Circuit since 1994. U.S. Court of Appeals for the Federal Circuit, *Judge Biographies*, https://dub.sh/HdlVb8R (last visited July 20, 2026). He has also sat by designation in some of the most patent-heavy districts in the country, and routinely rejects the precise relief ShoreShade has requested here. *Omni MedSci.,* 2025 WL 3719630, at *3.

ShoreShade's petition—or, in other words, to "institute" review. It will ***not*** reach the merits if it does not institute. Even though the PTAB has not indicated whether it will take the case, ShoreShade has asked this Court to freeze the litigation immediately. But none of the three grounds ShoreShade has proffered to support that request withstands scrutiny. And each of these three grounds should be viewed within the broader context that, as Judge Bryson has articulated, "stays are almost never granted" before the PTAB institutes review. *Omni MedSci.,* 2025 WL 3719630, at *2.

***First,*** ShoreShade insists a stay is appropriate because this case is in its early stages. (D.E. 68, at 7–8). However, this ignores that the parties have fully briefed two preliminary injunction motions, and the Court has held two hearings and issued two substantive orders. In doing so, the Court has already received briefing, heard argument, and made a preliminary assessment of a number of the precise arguments ShoreShade raises in its PGR. Under relevant law, this procedural background supports denial of ShoreShade's Motion.

***Second,*** ShoreShade suggests a stay would meaningfully simplify the issues in the case. (D.E. 68, at 9–10). Courts disagree.

The PTAB has instituted fewer than 40% of petitions this fiscal year, so it's unlikely the PTAB will take its case. And even if it does, its review would be limited to only three of the ten claims at issue here, leaving the bulk of this case for the Court to resolve later regardless of what the PTAB concludes. In such circumstances, courts find that stays are not appropriate.

***Finally,*** ShoreShade claims that Solbello will not suffer irreparable prejudice if ShoreShade is permitted to pause the case while the parties wait on the PTAB. This is not true.

ShoreShade sat on its petition until the last possible day—despite knowing of Solbello's intent to protect its patents since before the '606 Patent even issued—and sought to effectively transfer the case to the PTAB only after this Court expressed initial skepticism about its invalidity arguments. ShoreShade should not be allowed to reap that unfair tactical advantage. What's more, as a direct competitor, Solbello loses its market share, its ability to maintain its pricing, and its customer goodwill with every additional month of delay.

The Court should deny ShoreShade's motion to stay before the PTAB has even decided whether to institute its petition.

## ARGUMENT

When deciding whether to stay a case pending PGR or *inter partes* review ("IPR"),[2] courts must ultimately weigh "whether the benefits provided by staying the litigation outweigh the potential drawbacks." *Phelan Grp., LLC v. Mercedes-Benz Grp. AG*, 2025 WL 3303050, at *3 (N.D. Ga. Oct. 3, 2025) (internal quotation marks omitted). A court "is under no obligation to delay its own proceedings by yielding to ongoing PTAB patent reexaminations." *OrthoAccel Techs., Inc. v. Propel*

[2] An IPR proceeding is similar to a PGR proceeding, except that it must be filed within twelve months after being served with an infringement complaint, whereas a PGR petition must be filed within nine months of the patent grant or reissuance. 35 U.S.C. §§ 315(b), 321(c). A party is also more limited in which invalidity grounds it can raise in an IPR proceeding. *Compare id.* § 311(b); *with id.* § 321(b).

*Orthodontics, LLC*, 2018 WL 1989561, at *1 (N.D. Cal. Jan. 19, 2018).[3] Instead, "[t]he decision to grant a stay is within the court's discretion, taking into account the totality of the circumstances." *Wonderland Nurserygoods Co. v. Kids II, Inc.*, 2016 WL 3958733, at *2 (N.D. Ga. Feb. 10, 2015), *report and recommendation adopted*, 2016 WL 4035521 (N.D. Ga. Mar. 16, 2016).

As ShoreShade points out, courts often distill this inquiry into three factors: (1) whether the case is still in its early stages, (2) whether a stay would simplify the issues in the case, and (3) whether a stay would unduly prejudice the nonmovant. *E.g.*, *MiMedx Grp., Inc. v. Liventa Bioscience, Inc.*, 2015 WL 13907479, at *3 (N.D. Ga. Apr. 6, 2015); *N. Atl. Imps., LLC v. LoCo-Crazy Good Cookers, Inc.*, 2024 WL 4827250, at *2 (D. Del. Nov. 19, 2024). "The party seeking a stay bears the burden of showing that a stay is appropriate." *MiMedx*, 2015 WL 13907479, at *2.

ShoreShade has not carried that burden. A stay before the PTAB has even decided whether to institute review would delay resolution of Solbello's live claims without any meaningful showing that PTAB proceedings are likely to narrow the dispute. It would also irreparably harm Solbello by halting this case while ShoreShade waits to see whether the PTAB will hear its challenge.

[3] Throughout this response, Solbello cites to several decisions from the District of Delaware, the Northern and Central Districts of California, and the Eastern District of Texas. Those courts have among the heaviest patent dockets in the country. Sasha G. Rao et al., *Patent Litigation 2026: Trends & Developments*, Chambers Practice Guides (last updated Feb. 12, 2026), https://dub.sh/0MU6bMw.

## I. Because the Court and the parties have already invested significant time in this case, this lawsuit is not truly in its early stages.

ShoreShade opens by insisting that this case is "in its infancy." (D.E. 68, at 1.) That atomistic way of framing the months of proceedings in this case underplays the significant amount of work the Court and the parties have put in to considering and litigating many of the very issues ShoreShade now wants to litigate at the PTAB.

In assessing whether a case is in its early stages, courts often look beyond technical labels like discovery and claim construction and instead consider a more fundamental question: how much time and effort have the court and the parties already invested in the district court proceedings, such that a stay would risk throwing that work away? *See, e.g.*, *Lane Shark USA, LLC v. Titan Implement LLC*, 2021 WL 12097703, at *2 (E.D. Tenn. May 21, 2021) (emphasizing the "substantial resources" expended in briefing and deciding a preliminary injunction motion); *SoftView LLC v. Apple Inc.*, 2012 WL 3061027, at *4 (D. Del. July 26, 2012) (looking to "the substantial resources already incurred by both the parties and the Court in this litigation"). Measured that way, this case is well into its development.

To begin, "[t]he Court's expenditure of resources is an important factor in evaluating the stage of the proceedings." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013). And the Court has already invested significant time in this litigation. The parties fully briefed two motions for a preliminary injunction, with detailed arguments about infringement and invalidity on both sides. (D.E. 5; D.E. 22; D.E. 32; D.E. 34-1; D.E. 49; D.E. 53). The Court held two in-person hearings to consider that briefing and issued two substantive orders.

(D.E. 42; D.E. 61). And on Solbello's second motion, the Court issued a reasoned opinion addressing the parties' merits arguments on a preliminary basis, including a determination that ShoreShade had not "create[d] a substantial question as to validity" at that stage. (D.E. 61, at 8).

That level of substantial investment is why courts often conclude that one or more rounds of preliminary-injunction litigation move a case beyond its early stages. *E.g.*, *Lane Shark*, 2021 WL 12097703, at *3 (denying stay where the preliminary-injunction motion involved "substantial briefing," multiple affidavits, and "an all-day hearing"); *OrthoAccel*, 2018 WL 1989561, at *1 (stay unwarranted in part because there had "already been significant substantive work invested by the parties and the Court in conjunction with the preliminary injunction motion"); *Tinnus Enters., LLC v. Telebrands Corp.*, 2017 WL 2989201, at *4 (E.D. Tex. Apr. 5, 2017) (two preliminary injunctions were "significant proceedings" that weighed against a stay, as was the completion of claim construction).

ShoreShade's contrary insistence that "the merits of the case have not begun to be litigated," (D.E. 68, at 7–8), is wrong. This Court has already invested a substantial amount of time and effort in familiarizing itself with, and adjudicating, the merits of this case—including a number of the same issues ShoreShade has raised in its PGR.

What's more, a pre-institution stay would not save this Court much time or effort given where this litigation currently stands. The PTAB is expected to rule on institution by December 30. (D.E. 68, at 3). Between now and then, save for ruling on

ShoreShade's eight-page partial motion to dismiss, (D.E. 64), there will be nothing for the Court to decide barring unforeseen circumstances. Every deadline set forth by the Court's scheduling order through the end of November is for either a party-to-party exchange or joint statement. (D.E. 63, at 1–2). And although the next item on the calendar after November 30 is a claim construction hearing—which will require this Court's time—the Court could, if it chose, simply schedule it for after the PTAB renders an institution decision in December.

By the same token, a stay would save ShoreShade little effort either. In its PGR petition, ShoreShade has already served up ten pages of claim-construction argument and forty pages of invalidity argument across five grounds. (ShoreShade PGR Petition, attached hereto as **Exhibit A**). It has also filed an 81-page expert declaration as additional support. (Decl. of S. Melamed, attached hereto as **Exhibit B**). So its invalidity contentions and claim-construction arguments are well on their way to being drafted. Whatever burden ShoreShade will have to shoulder in this case between now and December 30, it's already borne a large portion of it in its PGR submissions. There's no sound reason to place the case on hold at the current moment just to see whether the PTAB will institute ShoreShade's petition.

## II. ShoreShade has failed to demonstrate that a stay will simplify the issues in this case.

The second factor likewise weighs against a stay. As many courts have pointed out, a stay is only appropriate if it will materially simplify the issues in the case. The pre-institution stay ShoreShade is seeking will not, for at least two reasons.

### A. There is a high probability the PTAB will not institute review.

Begin with the most obvious flaw with ShoreShade's request to stay the case right now: the PTAB may well never hear its challenge in the first place. The Patent and Trademark Office, through the PTAB, has absolute discretion to institute (or refuse to institute) any IPR or PGR petition. *See* 35 U.S.C. §§ 314(a), 324(a); *see also Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016). It can do so either by issuing a "discretionary" denial, in which it declines to hear the case for reasons unrelated to the merits, like "overlap between issues raised in the petition and in the parallel proceeding." *Apple v. Fintiv*, IPR2020-00019, Paper 11 at 6 (PTAB Mar. 20, 2020) (attached hereto as **Exhibit C**). Or it can deny institution on the merits by concluding it is unlikely that "at least 1 of the claims challenged in the petition is unpatentable." 35 U.S.C. § 324(a).

Either way, if the PTAB never institutes a case, it of course will not "simplify" the parallel district court litigation. "[A]ny potential issue simplification is [thus] a matter of conjecture" until the PTAB acts. *3Shape A/S v. Carestream Dental, LLC*, 2023 WL 2068050, at *1 (N.D. Ga. Jan. 5, 2023). For that reason, "stays are almost never granted before [PGR] is instituted." *Omni MedSci*, 2025 WL 3719630, at *2 (collecting cases); *see also, e.g.*, *Entangled Media, LLC v. Dropbox Inc.*, 732 F. Supp. 3d 1120, 1124 (N.D. Cal. 2024); *DeJule v. MillerKnoll, Inc.*, 2024 WL 5680071, at *1 (W.D. Mich. Feb. 2, 2024); *Skillz Platform Inc. v. Aviagames Inc.*, 2022 WL 1189882, at *3–4 (N.D. Cal. Apr. 21, 2022); *MiMedx*, 2015 WL 13907479, at *4; *Freeny v. Apple*

*Inc.*, 2014 WL 3611948, at *1 (E.D. Tex. July 22, 2014) (Bryson, J.) (collecting cases); *McRo, Inc. v. Bethesda Softworks LLC*, 2014 WL 1711028, at *3 (D. Del. May 1, 2014).

In recent years, any suggestion of simplification like ShoreShade's has become even more speculative, because the odds the PTAB will institute any particular case have declined dramatically.[4] In fiscal years 2022 through 2024, the PTAB's institution rate consistently hovered around 67%. Stephen Yang et al., *A Narrowing Path to Institution: Domestic Industry Enters the Patent Office*, Dentons (Apr. 15, 2026), https://dub.sh/rq0oidL. That is, it agreed to hear about two-thirds of all petitions filed.

But the PTAB has since adopted a series of changes in large part to ease its workload and prevent bad actors from exploiting the PGR and IPR processes. Beginning in March 2025, to bolster the discretionary denial process, the PTAB began bifurcating its discretionary and merits pre-institution reviews. Coke Morgan Stewart, *Memorandum re Interim Processes for PTAB Workload Management*, USPTO (Mar. 26, 2025), https://dub.sh/GKXAdMi. It has also expanded the criteria that the Board can consider when weighing a discretionary denial. *Id.*; John A. Squires, *Memorandum re Additional Discretionary Institution Considerations – U.S. Manufacturing & Small Business Use of AIA Proceedings*, USPTO (Mar. 11, 2026),

---

[4] Courts assessing whether a stay will simplify issues routinely look to the PTAB's published trial statistics to determine how frequently the PTAB institutes review. *E.g.*, *New World Med. Inc. v. MicroSurgical Tech. Inc.*, 2021 WL 952456, at *3 (W.D. Wash. Feb. 18, 2021), *report and recommendation adopted*, 2021 WL 949382 (W.D. Wash. Mar. 12, 2021).

https://dub.sh/ckM9DY1. Since making those changes, the PTAB's institution rate has cratered. Compared to the stable two-thirds rate in the years prior, its institution rate fell to 50% in fiscal year 2025. Yang et al., *supra.* And it has plummeted even further this year: as of May, ***the PTAB has instituted only 38% of cases in fiscal year 2026***. USPTO, *PTAB Trial Statistics* 7 (May 2026), https://dub.sh/r4iN0a3.[5] At present, then, ShoreShade's petition is more likely than not to be denied before the PTAB ever reaches the merits.

If that is what happens here, this case will simply "be[] left languishing on the Court's docket with no discovery, [and] no positioning of the parties on claim construction" for six months. *Wherevertv, Inc. v. Comcast Cable Commc'ns, LLC*, 2019 WL 5061260, at *3 (M.D. Fla. Oct. 9, 2019). There is no good reason to run that risk.

The cases on which ShoreShade relies are not to the contrary. For its part, *Phelan*—the primary case ShoreShade points to—involved a *post*-institution stay. 2025 WL 3303050, at *6. ShoreShade does cite a handful of other cases from the Northern District of Georgia in which those courts granted stays before the PTAB instituted the petition. *Doubleday Acquisitions LLC v. Envirotainer AB*, 2022 WL 18778991 (N.D. Ga. June 3, 2022); *Aegis 11 S.A. v. Hisense Co.*, 2021 WL 12300139 (N.D. Ga. June 23, 2021); *Epic Tech, LLC v. Pen-Tech Assocs., Inc.*, 2020 WL 8258736 (N.D. Ga. Sept. 28, 2020). But as already discussed, that is not the "widely followed" approach. *Omni MedSci*, 2025 WL 3719630, *3. And in any event, those cases are distinguishable on at least the following grounds:

[5] Notably, the bulk of these recent institution denials appear to have been on discretionary, not merits, grounds. Yang et al., *supra.*

- Each was decided before 2026, when the PTAB's institution rate plummeted.
- None involve the same level of substantive preliminary injunction briefing, argument, and decision, let alone two rounds of it.[6]
- None of those defendants had received a preliminary decision casting doubt on the defendants' invalidity arguments prior to their petitioning the PTAB for review.

### B. The PGR could at most reach only three of the ten asserted claims.

Even if the PTAB does institute review, the PGR could not do the heavy lifting ShoreShade promises.

Solbello's operative infringement contentions accuse ShoreShade's "next-gen" product of infringing ten claims of the '606 Patent: claims 21, 22, 24, 26, 27, 29, 34, 44, 45, and 47.[7] ShoreShade's PGR petition, by contrast, seeks to invalidate just three of them: 44, 45, and 47. So even in ShoreShade's best-case scenario, in which the PTAB agrees to hear its case and invalidates every single one of the claims at issue, the case will still have to return to this Court for the parties to litigate the seven remaining claims. Where, as here, the challenged claims cover only a subset of what's being litigated in the district court, courts routinely conclude that a stay will not

[6] Although the plaintiff in *Doubleday* did move for a preliminary injunction, it did so only after the defendant had already moved for a stay and after briefing on the stay request was complete. *See generally* Docket, *Doubleday Acquisitions LLC v. Envirotainer AB*, No. 1:21-cv-03749 (N.D. Ga.). So the plaintiff never argued that that level of investment in the litigation rendered a stay inappropriate.

[7] Although Solbello's First Amended Complaint focuses on claim 44, a plaintiff need not "plead infringement on an element-by-element basis" for every claim it may ultimately assert. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021).

meaningfully simplify the issues.[8] Even *Phelan* recognized that courts must consider whether a PGR would "dispose of only *part* of the case." 2025 WL 3303050, at *3 (emphasis added).

ShoreShade's *Sotera* stipulation—that it will not later re-litigate the grounds it raised or could have raised, (D.E. 68, at 9–10)—does little to move the needle back in its direction. For one thing, that stipulation will only matter if the PTAB institutes the petition, which it is statistically unlikely to do. For another, that stipulation will not preclude all, or even most, further proceedings before this Court because the parties will still have to litigate the remaining seven claims after the PTAB renders its decision on the merits.

ShoreShade's only remaining pitch on this factor is that if the PTAB institutes, it might "resolve claim construction disputes before they reach the Court." (D.E. 68, at 10). But "district courts are not bound by the PTAB's claim constructions." *Lane Shark*, 2021 WL 12097703, at *3; *accord SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1376 (Fed. Cir. 2016). This Court will still have to construe the claims itself; the PTAB's constructions will not conclusively resolve anything. And in any event, that argument once again assumes the PTAB will institute. ShoreShade has simply identified no reason to grant a *pre*-institution stay.

At bottom, a stay simplifies nothing unless the PTAB institutes, and there's a significant chance it will not do so here. Even if it does, it can dispose of at most three

[8] *E.g.*, *DeJule*, 2024 WL 5680071, at *2; *MiMedx*, 2015 WL 13907479, at *4; *Otto Bock HealthCare LP v. Össur hf*, 2013 WL 12313020, at *2 (C.D. Cal. Dec. 16, 2013); *SoftView*, 2012 WL 3061027, at *3.

of ten asserted claims. A stay is unlikely to meaningfully simplify this case at the current moment.

## III. A stay would unduly prejudice Solbello.

Finally, staying this case now would work real prejudice on Solbello. ShoreShade is correct that courts often break their discussion of prejudice into four subfactors: the status of the review proceedings, the relationship of the parties, the timing of the PGR petition, and the timing of the motion to stay. (D.E. 68, at 10). But contrary to how ShoreShade paints them, each of these subfactors tips in favor of denying a stay at this juncture.

### A. The status of the PTAB proceedings weighs against a stay.

As explained above, the PTAB has not yet decided whether to institute review. And the prevailing practice is not to grant a stay before any such decision. *E.g.*, *Freeny*, 2014 WL 3611948, at *1 (collecting cases). For good reason: whether a stay will streamline matters for the district court remains "a matter of conjecture" until the PTAB decides to hear the case. *3Shape*, 2023 WL 2068050, at *1. That is particularly so because the PTAB has been instituting fewer than 40% of petitions as of late.

### B. The parties' relationship weighs against a stay.

ShoreShade concedes that it and Solbello "are direct market competitors." (D.E. 68, at 10.) But it insists that fact tips only "slightly" against a stay. (D.E. 68, at 10). Not so.

Solbello has a strong "interest in the timely and cost[-]effective enforcement of [its] patent rights." *Tinnus*, 2017 WL 2989201, at *3. And where a plaintiff and defendant compete directly in the same market, "there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *N. Atl. Imps.*, 2024 WL 4827250, at *4. So much so that many courts "*presume* that a stay will prejudice the non-movant" where the parties compete head-to-head. *ADA Sols., Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 351 (D. Mass. 2011) (emphasis added).

Solbello has already catalogued the extensive harm it has faced as a result of ShoreShade's infringement. As it outlined in its preliminary injunction briefing, ShoreShade's copycat product threatens Solbello's market share, its pricing, and its goodwill with consumers. (D.E. 5, at 18–22; D.E. 49, at 18–22). And, as this Court observed, ShoreShade did not meaningfully contest that harm. Instead, "[t]he main point of contention between the Parties" was "likelihood of success on the merits," not the presence of ongoing irreparable harm. (D.E. 42, at 8). Yet ShoreShade would have Solbello absorb six or more additional months of that unchecked head-to-head competition on the strength of a PGR petition the PTAB may never institute. Solbello should not have to bear that "outsized consequence[]" just because ShoreShade simply asked the PTAB to hear its case. *N. Atl. Imps.*, 2024 WL 4827250, at *4.[9]

[9] ShoreShade also suggests that "Solbello chose to move forward with this case" during an earlier stay. (D.E. 68, at 11). That is not true. This Court's order stayed discovery deadlines only. (D.E. 48). Nothing in that order barred Solbello from moving

### C. The timing of ShoreShade's PGR petition and stay motion counsels against a stay.

Finally, courts are wary of stays "where the timing of the request for PTO review suggests a dilatory intent on the movant's part." *Nexans Inc. v. Belden Inc.*, 2014 WL 651913, at *3 (D. Del. Feb. 19, 2014), *report and recommendation adopted*, 2014 WL 1232218 (D. Del. Mar. 12, 2014). "A request for reexamination made well after the onset of litigation followed by a subsequent request to stay may lead to an inference that the moving party is seeking an inappropriate tactical advantage." *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010). Chief among those improper advantages is a defendant's transferring a case from the plaintiff's chosen forum to the defendant's. *SoftView*, 2012 WL 3061027, at *4. That is no doubt why "courts expect accused infringers to evaluate whether to file, and then to file, IPR [or PGR] petitions as soon as possible after learning that a patent may be asserted against them." *Nike, Inc. v. Skechers U.S.A., Inc.*, 2025 WL 439935, at *5 (C.D. Cal. Feb. 4, 2025).

Here, ShoreShade learned of Solbello's patent rights in November 2023 at the latest, when Solbello sent it a cease-and-desist letter. (D.E. 50-1, at 34). It knew Solbello viewed its products as infringing and could easily have kept tabs on Solbello's reissue application. So when the '606 Patent issued in September 2025, ShoreShade could have filed its PGR promptly thereafter. It did not.

---

to enjoin ShoreShade from selling its "new" infringing product that it released after that limited stay was entered.

ShoreShade then had eight more months while this case pended to petition for review. It could have filed its PGR shortly after responding to Solbello's first preliminary-injunction motion. It did not. It could have filed during the more-than-four-month lull between this Court's denial of the first motion (D.E. 42) and Solbello's filing of the second (D.E. 49), when the case was effectively on hold and the parties were not actively litigating. Again, it did not.

Instead, only after this Court ruled that ShoreShade had not "create[d] a substantial question as to validity," (D.E. 61, at 8), did it then seek to litigate validity in another forum.[10] Staying this case at ShoreShade's request in favor of PTAB review therefore would "provide [it] with its choice of forum without any compelling justification for doing so" at this point. *SoftView*, 2012 WL 3061027, at *4.[11]

ShoreShade's attempt to explain away its delay rings hollow. It emphasizes that it filed the PGR "within 43 days" of Solbello's First Amended Complaint becoming operative, and about two weeks after receiving Solbello's operative infringement contentions. (D.E. 68, at 11). But that ignores the seven months prior

[10] Notably, with the exception of one new argument made under 35 U.S.C. § 103, the arguments ShoreShade presses in its PGR petition are substantively identical to those it asserted in its response to Solbello's Second Motion for Preliminary Injunction. (*Compare* D.E. 53, at 5–6 (anticipated by Neal and the German Reference); *with* Ex. A at 42—58 (same); *compare* D.E., at 6–7 (lack of written description and enablement); *with* Ex. A at 77–83 (same)).

[11] ShoreShade repeatedly stresses that PGRs are "favored" because they must be filed within nine months of a patent's grant. (D.E. 68, at 4). But that ShoreShade was even able to file a PGR (rather than a less-favored IPR) owes more to Solbello's diligence than ShoreShade's. Solbello moved for a preliminary injunction just over a month after the '606 Patent issued. (D.E. 1, at 6). ShoreShade by contrast waited almost eight months to file its PGR—indeed, it would've had only four more months to file a less-favored IPR.

in which ShoreShade did nothing. ShoreShade didn't need Solbello's amended complaint or its infringement contentions to know that Solbello was enforcing its rights under the '606 Patent against ShoreShade's products and would continue to do so. Solbello made that clear when it first filed this lawsuit back in November 2025, and again when it moved for a preliminary injunction to block sales of ShoreShade's "next-gen" product in April. ShoreShade does not explain why, in the months before this Court issued its preliminary merits decision, it never once suggested it would seek PGR.

In sum, all of these subfactors indicate that a pre-institution stay would work real prejudice on Solbello. ShoreShade is a direct competitor who sat on a PGR petition for nearly a year and filed only after receiving an unfavorable preliminary ruling on validity. Factor three likewise indicates that a stay would be inappropriate at the moment.

## CONCLUSION

For these reasons, Solbello respectfully asks that the Court deny Defendant's Motion to Stay.

This the 20th day of July, 2026.

*/s/ Christopher A. Cosper*
Christopher A. Cosper
Ga. State Bar I.D. No.: 142020
E-mail: ccosper@hullbarrett.com
For the firm of
Hull Barrett, PC
801 Broad Street, 7th Floor
Augusta, GA 30901
Telephone: (706) 722-4481
Facsimile: (706) 722-9779

*/s/ Joseph A. Schouten*
Joseph A. Schouten*
N.C. State Bar I.D. No.: 39430
E-mail: docket@wardandsmith.com
E-mail: jas@wardandsmith.com
Payton Collier Bullard*
N.C. State Bar I.D. No.: 56731
E-mail: pcbullard@wardandsmith.com
Gavin B. Parsons*
N.C. State Bar I.D. No.: 28013
E-mail: gbparsons@wardandsmith.com
Mark S. Wigley*
N.C. State Bar I.D. No.: 63599
E-mail: mswigley@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 33009
Raleigh, NC 27636-3009
Telephone: (919) 277-9100
Facsimile: (919) 277-9177

**Of counsel, admitted pro hac vice*

*Attorneys for Plaintiff Solbello, Inc.*

**Certificate of Service**

I hereby certify that on July 20, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Lucas A. Westby
E-mail: lucas.westby@nelsonmullins.com
Megan Walker Burton
E-mail: megan.burton@nelsonmullins.com
Nelson Mullins Riley & Scarborough, LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363

Craig N. Killen
E-mail: craig.killen@nelsonmullins.com
Jonathan D. Todd
E-mail: jonathan.todd@nelsonmullins.com
Nelson Mullins Riley & Scarborough, LLP
One Wells Fargo Center
301 S. College Street, 23rd Floor
Charlotte, NC 28202

*Attorneys for Defendant ShoreShade LLC*

*/s/ Christopher A. Cosper*
Christopher A. Cosper
Ga. State Bar I.D. No.: 142020
E-mail: ccosper@hullbarrett.com
For the firm of
Hull Barrett, PC
801 Broad Street, 7th Floor
Augusta, GA 30901
Telephone: (706) 722-4481
Facsimile: (706) 722-9779