**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| SOLBELLO, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-00267-JRH-BKE |
| SHORESHADE, LLC, | ) | |
| Defendant. | ) | |

**SHORESHADE LLC'S REPLY IN SUPPORT OF MOTION**
**TO STAY PENDING POST GRANT REVIEW PROCEEDINGS**

ShoreShade provides this short reply in support of its motion to stay pending post-grant review proceedings (Dkt. 68).

## I. Post-Grant Review Proceedings are Instituted More Often than they are Denied.

Solbello's response (Dkt. 71) incorrectly argues that the United States Patent & Trademark Office (USPTO) is more likely than not to deny institution of the PGR proceeding. For example, page 10 of the response states: "At present, then, ShoreShade's petition is more likely than not to be denied before the PTAB ever reaches the merits." Similarly, on page 12, Solbello again states that the PTAB is "statistically unlikely to [institute the PGR]." However, the statistics show that the PGR is more likely than not to be instituted.

Solbello's arguments seem to misread the institution statistics published by the PTAB. Specifically, the numbers that Solbello presents in its response provide institution rates for *all* PTAB proceedings, combining data for inter partes reviews (IPRs) and post-grant reviews (PGRs). This data does not accurately represent the institution rate for just PGRs, which is significantly better than for IPRs. Of the 56 PGR petitions acted upon in the USPTO's 2026 fiscal year through

May, 29 have been instituted, yielding an institution rate of 51.8 percent. https://www.uspto.gov/dashboard/ptab/trials.html (last visited August 3, 2026) ("Institution decisions on petitions by fiscal year" section under "PTAB Trial Statistics" tab shows 29 institutions and 27 denials of institution decisions in this period for PGR petitions). By contrast, only 36.8 percent of IPRs have been instituted over the same period. https://www.uspto.gov/dashboard/ptab/trials.html (last visited August 3, 2026) ("Institution decisions on petitions by fiscal year" section under "PTAB Trial Statistics" tab shows 274 institutions and 471 denials of institution decisions in this period for IPR petitions).[1] This significant difference in institution rates makes it even clearer that "[p]etitions for post-grant review are favored . . . ." *Multi-Color Corp. v. Brook & Whittle Ltd.*, PGR2025-00025, Paper 10 at 2–3 (July 16, 2025). Contrary to Solbello's arguments, institution of the PGR proceeding is likely.

Solbello attempts to distinguish the in-circuit authority cited by ShoreShade by saying these cases are before institution rates began to plummet in 2026. However, only the institution rates of IPRs have fallen below 50 percent. Because institution rates for PGRs remain above 50 percent, Solbello's criticism of the in-circuit authority is misplaced.

## II. The Case Law Supports a Stay.

Solbello rests its "almost never" theme on out-of-circuit cases, ignoring the case law from within this circuit stating that stays should be "liberally granted." *See, e.g.*, *Doubleday Acquisitions LLC v. Envirotainer AB*, No. 1:21-cv-03749-SCJ, 2022 WL 18778991, at *1 (N.D. Ga. June 3, 2022). The case law in this circuit cuts in favor of a stay, and the Court has the discretion to stay

[1] ShoreShade has independently verified using the PTAB's PTACTS filing system (which is similar to Pacer) that the institution rate for PGRs so far in the USPTO's fiscal year 2026 was about 51.8% and was about 59.1% in the USPTO's 2025 fiscal year.

before an institution decision. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014).

## III. Presence of Unchallenged Claims does not Justify Denial of Stay.

The additional claims of the Reissue Patent, discussed for the first time in Solbello's infringement contentions, do not justify denial of a stay.

As Solbello notes, the PGR petition seeks to invalidate claims 44, 45, and 47 of the Reissue Patent, and does not specifically address claims 21, 22, 24, 26, 27, 29, and 34 (the "Unchallenged Claims"). These claims, which are neither referenced in the Amended Complaint nor addressed in either of Solbello's motions for preliminary injunction, were mentioned for the first time in the infringement contentions served in June. Solbello's belated assertion of the Unchallenged Claims, after litigating two preliminary injunction motions on other claims, does not justify continuing the litigation while the PTAB resolves the claims Solbello itself chose to lead with.

The weakness of the infringement arguments for each of the Unchallenged Claims is readily apparent. For example, the Unchallenged Claims require ribs attached to a pivot cap that "can freely rotate about the mast," a feature that is absent from the accused ShoreShade product. Although Solbello relies on the doctrine of equivalents in an attempt to show these claims are infringed, any infringement case that acknowledges the absence of literal infringement is an uphill climb. That is especially true here, where Solbello's equivalents theory would read the "freely rotate" requirement out of the claims altogether.

Also, ShoreShade does not ask the USPTO to determine validity of the Unchallenged Claims, but claim construction and factual determinations made in the PGR are likely to carry over and be relevant to those Unchallenged Claims. The Unchallenged Claims include many limitations that are present in claim 44 and other claims that are challenged. District courts are not bound by

the PTAB's claim constructions, as Solbello notes, but those constructions are informative to the Court as it decides any claim construction issues. Moreover, to the extent that invalidity arguments about the Unchallenged Claims "reasonably could have been raised" in the PGR, those arguments will be precluded in the litigation if the PGR is instituted. Thus, the scope of any eventual trial will be limited and simplified.

## IV. Timing of Request for Stay.

ShoreShade's PGR petition and motion to stay were prepared promptly, particularly given the history of this case, and Solbello's timing arguments do not withstand scrutiny. ShoreShade is a small company with limited resources. During the short time since the Reissue Patent granted, ShoreShade had to fight off two preliminary injunction motions, engaging in expedited briefing and an expedited hearing in both cases. Because of the expense involved with filing a PGR, the decision to file was difficult but ultimately deemed necessary because of Solbello's positions.[2] ShoreShade filed its petition within the statutory period for PGRs—which is itself short—and soon after it became clear that Solbello would also accuse the next generation product of infringement.

## V. Despite Solbello's Remaining Arguments, a Stay is Appropriate.

Solbello oddly argues against a stay while simultaneously suggesting the Court could delay the claim-construction hearing, minimizing the significance of the party-to-party exchanges and joint statements required before the claim construction hearing. Judicial efficiency is only one benefit of a stay. The PGR process exists largely to reduce the parties' own litigation costs. That benefit is frustrated if the parties remain bound by Scheduling Order deadlines while the PTAB proceeds.

[2] The filing fee alone for submitting the PGR petition was $59,375, of which $34,375 is refundable if institution is denied. For a small company, the decision to prepare and file a PGR petition cannot be made lightly.

Additionally, Solbello's "irreparable prejudice" arguments are undermined by the two denied preliminary injunctions, Solbello's request to push back the claim construction hearing, and Solbello's past agreement to stay the case until a decision on ShoreShade's initial motion to dismiss.

That previous preliminary injunction proceedings have occurred does not compel denial of a stay. Here, the Court emphasized that the "findings [were] preliminary and may change with further factual development and argument," and the Court limited its analysis to the issues necessary to resolve the motions. *See, e.g.*, Dkt. 61 at 14 (stating that the Court need not address the remaining three preliminary injunction elements given the absence of a likelihood of success on the merits). Although Solbello has now attempted to inject additional claims to increase the complexity of these proceedings, the additional claims were not at issue in the preliminary injunction proceedings. Thus, the resources that have been expended thus far by the Court and the parties are a fraction of the resources that will still need to be expended if the case is not stayed. *Tinnus Enterprises, LLC v. Telebrands Corporation* is also distinguishable because, when the motion to stay was filed, the parties had completed claim construction proceedings, completed substantial discovery, and the court had resolved discovery motions at the time of a stay, which is not the case here. 2017 WL 2989201, at *4 (E.D. Tex. Apr. 5, 2017).

## VI. Conclusion

For the reasons above and the reasons in the Motion to Stay (Dkt. 68), ShoreShade respectfully requests entry of a stay pending resolution of the pending PGR petition.

NELSON MULLINS RILEY & SCARBOROUGH LLP

*/s/ Lucas A. Westby*
**Lucas A. Westby**

GA Bar No. 594008
lucas.westby@nelsonmullins.com
**Megan Walker Burton**
GA Bar No. 525103
megan.burton@nelsonmullins.com
**Nelson Mullins Riley & Scarborough, LLP**
201 17th Street NW
Suite 1700
Atlanta, GA 30363

**Craig N. Killen***
SC Bar No. 65464
craig.killen@nelsonmullins.com
**Jonathan D. Todd***
SC Bar No. 103758
jonathan.todd@nelsonmullins.com
**Nelson Mullins Riley & Scarborough, LLP**
301 South College Street, Suite 2300
Charlotte, NC 28202

*Counsel for Defendant ShoreShade LLC*

** Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I certify that service of the foregoing document has been completed by filing this document with the Court's electronic-filing system.

This the 3rd day of August 2026.

*/s/ Lucas A. Westby*
Lucas A. Westby